[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11155
Non-Argument Calendar

_____

D.C. Docket No. 1:93-cr-00357-ODE-JMF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDRIC W. TOKARS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 31, 2020)

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Fredric Tokars appeals the district court's order denying his motion to compel the government to file a motion to reduce his sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. Finding no error, we affirm.

I.

Tokars, a former attorney and state prosecutor, is now serving multiple concurrent life sentences in federal prison for the murder-for-hire of his wife and various racketeering, drug trafficking, and money laundering crimes. While serving his sentences in Iowa, Tokars was approached by a fellow inmate (Dustin Honken) who threatened to tell other prisoners that Tokars used to be a prosecutor if Tokars did not help him with his legal papers. In the course of seeking Tokars's assistance, Honken disclosed details about five murders that Honken and his girlfriend, Angela Johnson, had committed several years earlier. Tokars related this information to federal prosecutors and cooperated in the subsequent investigation and prosecution of Honken and Johnson. Tokars testified at Honken's murder trial, and Honken was convicted and sentenced to death.

Tokars also cooperated with state authorities in Arizona under similar circumstances. Robert Orloff, a prisoner housed with Tokars in Wisconsin, coerced Tokars into helping him with a habeas petition and subsequently disclosed details about a murder that Orloff had committed many years earlier. According to

2

a Maricopa County prosecutor, Tokars's extensive cooperation and assistance was critical in the successful prosecution of Orloff for murder, burglary, and arson.

Based on Tokars's assistance in these matters, Tokars's attorney contacted federal prosecutors in the Northern District of Georgia (where Tokars was convicted and sentenced) requesting that the government file a Rule 35(b) motion to reduce Tokars's sentence.  According to counsel, the U.S. Attorney declined to file a substantial-assistance motion and informed counsel that the government would never request a reduction in Tokars's sentence, regardless of the significance of his cooperation.

Tokars moved to compel the government to file a substantial-assistance motion.  The district court denied Tokars's motion, and this appeal followed.

## II.

Rule 35(b) provides that, "[u]pon the government's motion" the district court may reduce a sentence if the defendant provided "substantial assistance" in the investigation or prosecution of another person.  Fed. R. Crim. P. 35(b)(1)–(2). The Supreme Court has held that this language "gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade v. United States*, 504 U.S. 181, 185 (1992) (interpreting language in 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 authorizing substantial-assistance reductions

3

"[u]pon motion of the Government"). In other words, the decision whether to file a substantial-assistance motion is a matter of prosecutorial discretion, and the mere fact that a defendant has provided substantial assistance does not mean that the government is obligated to seek a sentence reduction. *See id.* at 186, 187. In the absence of an enforceable promise by the government to file a substantial-assistance motion, judicial review of the exercise of this discretion "is appropriate only 'when there is an allegation *and* a substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation.'" *United States v. Dorsey*, 554 F.3d 958, 961 (11th Cir. 2009) (emphasis in original) (quoting *United States v. Forney*, 9 F.3d 1492, 1502 (11th Cir. 1993)).

Tokars argues that the government's refusal to file a substantial-assistance motion in his case was in bad faith, motivated by personal animosity and a desire to retaliate against him for the exercise of his constitutional right to a jury trial, and was otherwise "not rationally related to any legitimate Government end." *Wade*, 504 U.S. at 186. Tokars's argument is essentially that he earned a reduction in his sentence through his "extraordinary cooperation" with federal authorities in Iowa and state prosecutors in Arizona. This argument rests on two predicates, both of which are fatally flawed.

A.

*First,* Tokars contends that the government was contractually obligated to consider filing a Rule 35(b) motion based on his "cooperation agreement" with federal prosecutors in the Northern District of Iowa. In support of this contention, he submits a letter from C.J. Williams, an Assistant U.S. Attorney in the Northern District of Iowa, in which Williams informed his counterparts in the Northern District of Georgia of Tokars's "substantial contribution" to the capital murder prosecutions of Honken and Johnson. Williams stated that he was providing information about Tokars's assistance "for your use in determining whether you believe a reduction of Mr. Tokars's sentence is appropriate." But—setting aside whether Williams's office had the authority to make any commitment on behalf of prosecutors in another district—Williams did *not* promise that federal prosecutors in Georgia would file, or even consider filing, a motion to reduce Tokars's sentence.

To the contrary, Williams explained in his letter that his office "made it clear to Mr. Tokars at all times that we could not make such a motion and that such power rested exclusively with your office. We advised him that all we could and would do is to advise your office of the nature and extent of his cooperation. We told him that we would not make a recommendation one way or the other, but

5

rather, would simply relate his cooperation." Williams kept the government's end of this bargain by writing to the U.S. Attorney's office in Georgia and describing in detail Tokars's assistance and its usefulness in the Iowa murder prosecutions. The government was not contractually obligated to file, or even to consider filing, a Rule 35(b) motion.

## B.

*Second*, Tokars contends that the government's decision whether to file a substantial-assistance motion should be based solely on whether and to what extent the defendant has cooperated. Considering his own significant contributions to three separate murder prosecutions, his argument goes, the government can have no good reason for refusing to file a motion for him, and so its motivation must have been improper. We have rejected this argument before. *See United States v. Nealy*, 232 F.3d 825, 831 (11th Cir. 2000).

In *Nealy*, as here, the defendant argued that "the government cannot refuse to file a substantial assistance motion for 'reasons other than the nature of [defendant's] substantial assistance.'" *Id.* (alteration in original) (quoting *United States v. Anzalone*, 148 F.3d 940, 941 (8th Cir. 1998)). As we explained in *Nealy*, "this contention is not supported by *Wade* and is contrary to the broad grant of prosecutorial discretion recognized by this court." *Id.* (citing *Forney*, 9 F.3d at

6

1503 n.4).  Once again, we reject the suggestion that we should infer an unconstitutional motive based solely on the extent of the defendant's cooperation with the government.  A "claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or an evidentiary hearing.  Nor would additional but generalized allegations of improper motive."  *Wade*, 504 U.S. at 186.

Moreover, the government's stated reason for refusing to request a reduction in Tokars's sentence—ensuring just punishment given the nature and severity of Tokars's criminal conduct—is valid.  Tokars used his legal education and experience as a prosecutor to commit money laundering crimes in aid of a drug trafficking conspiracy, and when his wife discovered his crimes, he arranged for her to be murdered at a time when he knew that his young sons were likely to be present—which they were.  The government's "rational assessment of the cost and benefit that would flow from moving" for a reduction in Tokars's sentence is the kind of exercise that falls squarely within the arena of prosecutorial discretion.  *Id.* at 187.

## III.

Tokars has not made the required "substantial showing" that the government's reasons for refusing to file a motion to reduce his sentence were

7

unconstitutional.  *Dorsey*, 554 F.3d at 961.  Accordingly, we affirm the district court's denial of Tokars's motion to compel.

**AFFIRMED.**